Good afternoon, may it please the court. My name is Rob Carty, I am arguing today on behalf of the appellant, Howmedica Osteonics Corp., which has been known throughout this case as HOC, so you'll probably hear that today. I'd like to reserve three minutes for rebuttal if I could. I understand that this is a case of first impression in this court, and the court may have questions right away, but I'd like to make four quick headline points if I could. First, Stewart Organization is dispositive of the issues in this case. It makes clear that Section 1404A, and only Section 1404A, governs whether to give effect to forum selection clauses in federal court. It held that an Alabama statute, which is functionally identical to Section 925, did not overcome a forum selection clause, and its analysis really couldn't have been clearer. I'm sorry, but I'm going to interrupt you with your headline points, and I know you'll get back to it. So on that, what do you say with regard to the language in Sun v. Advanced China Health Care, where we said very specifically, because 1404A and the forum nonconvenience doctrine from which it derives entail the same balancing of interest standard, courts should evaluate a forum selection clause in the same way, pointing to a nonfederal forum in the same way they evaluate a forum selection clause pointing to a federal forum. We said in that case that you look at forum nonconvenience and 1404A in the same way. Well. Same standards. Yeah, I mean, it depends on whether you're speaking in generalities or whether you're speaking specifically, but Stuart Organization says that it is, that when you have a forum selection clause, 1404A basically preempts any state court, excuse me, any state statute, and what we have here is we have 1404A in which Congress has spoken about how transfers need to occur in federal court, and that statute displaces any state law that touches on the same subject. Let me give you a hypothetical. We obviously know what 225 says, but what if we had a California law that said forum selection clauses are very important, and to make sure the parties have really agreed, we're going to require both parties to put an extra signature on the contract below the forum selection clause, and if they don't, that provision is void. Would that, in terms of contract formation, would we ignore that statute too? Well, if under normal ordinary contract principles, you had a validly formed contract, I think that you would, I think that 1404A would displace it because that's what Stuart Organization is all about. What if the California legislature said these kind of employment contracts are so important, we're going to require that they be signed with a notary to make sure that people understand the gravity of what they're looking at. Would that also be void? I mean, would that also be irrelevant in a 1404 analysis? Assuming that, again, assuming that you have an otherwise validly formed contract, yes, I think 1404A displaces that. But 1404A, even in your view, would not displace a state contract law that required a contracting party to be competent. That's correct, because that's different. That goes to the formation of the contract. Explain to me how that's different. I mean, if a legislature is saying some contracts are so important, we want a juror at, why would that be out, but we want competent people would be in? Because if you, again, I'm going back to the basic premise that if you have a contract where you've got the offer, you've got the acceptance, you've got the meeting of the courts. Under these circumstances, this otherwise valid contract, you can't consider it. That's preemptive. What does what is otherwise valid mean? I mean, in in every other situation where we're looking at a contract that's formed in a particular state, when we're looking at otherwise valid, we're looking at the state common law and statutory requirements. I'm having trouble seeing what your dividing line is here. So let's do that in this case. Let's take Section 925 and look at whether it and this was actually my next headline point. But if you look at Section 925, Section 925 assumes that there is a validly formed contract. It invalidates nothing. If you have a form selection clause that has been that has been agreed to, Section 925 says, OK, it's valid, it's enforceable. The only question I mean, I I'm not sure how important that is, even if you're right. But that's not the way I read 925. 925 to me says an employer can't impose this requirement, period. And unless they're unless the person has a lawyer. And by the way, we're going to even give an extra advantage to the employee because we're not going to say it's void. We're going to say it's voidable at his discretion. So if you do this, he gets to choose void or not void. But I don't see anything in 925 saying this is a valid contract. To me, it says the employer can't do this unless the guy has a lawyer. So it says they can't do it. But then it recognizes the contract as being valid and avoidable if it's either invalid or it's voidable. It can't be both. And so the employee under 925 has the option of avoiding the contract down the road. But. That's no different from what the Alabama statute. So, counsel, if if 925 said that the contract is void, is that a different question? Effectively, no, because. OK, so then the whole the whole distinction you've drawn between voidable and void is of no consequence. Well, it is of consequence. I mean, excuse me. The difference is of no consequence, because in both cases you have a state statute interfering with the federal courts. Your argument doesn't really depend on the voidable language, because you've now taken the strong position that even if California said the contract is void, may not be enforced by either party, that that that would be interfering with Section 404A, 1404A, and therefore it is of no consequence. That's Stewart organization. OK, in Stewart, you know, you're I'm sorry. Go ahead. Go ahead. I mean, you're reading Stewart very broadly. And I don't read Stewart that broadly. I think Stewart's appropriately could be read much more narrowly simply for the proposition that a federal statute preempts a state statute where there's a conflict. And when it comes to a transfer, the conditions of 1404A and the factors to be considered in 1404A can't be overwritten by a state statute. And it doesn't mean that the state statute can't be considered or that if there's a form selection clause, you don't look to the state statute to see whether the form selection clause is valid or not. It just means that the state law cannot be determinative of a transfer motion because the factors of 1404 override. It seems to me that there is a more appropriate, narrow reading of Stewart that I think is consistent with all of the subsequent cases where a court would look to see whether there's a valid form selection clause under state law. If the clause is invalid, then that's not dispositive because the court must take into account the fact that the parties actually entered into that agreement in the first place. And that means something, but it's not dispositive. Why is that a more appropriate reading of Stewart than the broad reading that you're giving it that says don't look at state law at all? The court in Stewart organization said that 1404A governs the party's dispute, not withstanding any contrary Alabama policy. It also said that it was unnecessary to address the contours of state law. It said that we cannot make the applicability of 1404A depend on the content of state law. And it said that if a state cannot preempt a district court's consideration of a form selection clause by holding that it's automatically enforceable, it makes no sense for it to be able to do so by holding the clause automatically void. And don't forget, Justice Scalia made this very argument. He said that state law needs to govern whether it's valid. And he said that this statute in Alabama, which voided these agreements ab initio, determined that question and that the form selection clause should be voided, should be held invalid and should receive no consideration. That's what he said. And the majority called him out on that in footnote 10 and said, well, no, that makes no sense. And and so the majority rejected that very position. But in the context of that footnote 10 and given Justice Scalia's dissent, the Supreme Court wasn't making a flat rule necessarily that you don't look to state law at all. It's just that state law is not determined. You cannot look to state law to say that enforcement is required or that the enforcement cannot be recognized at all. So, Your Honor, you bring up a good point. And this is something that we need to consider, because there is the notion that state policies should be considered in the balance. If if a form selection clause should be considered at all, it should be on the back end when we're talking about public policy. But then the question is, well, what weight should it receive? And there can be all kinds of state policies out there, all kinds that may come into into this analysis. But there's one policy that we know doesn't get any weight. And that is when a state court comes in and purports to void or render avoidable a form, a validly formed form selection clause. Counsel, I can go ahead, Your Honor. In in Stewart Organization, this is this should be a pretty simple question, but I just can't find anything for it. I can't find what the Alabama policy was based on. You mentioned you said it was a statute. It wasn't a statute. It was. I believe it was. Well, there's nothing. In fact, yes, it was because it's still on the books. Well, I can't find anything. I can't find anything that may be true out of the 11th Circuit opinion. But I can't find anything in the Supreme Court opinion that refers to the statute. I don't see. In fact, I don't see any authority cited in Justice Marshall's opinion. Justice Scalia refers to an Alabama Supreme Court decision from 1980. But I don't I'm I'm wondering because it would be interesting to know. I think this goes to Judge Bennett's question, whether this whether this simply was a policy, a longstanding policy created by the courts, for example, or whether it was a contract formation question, which might be a very, very different problem. The answer to your question, Your Honor, is yes, this was a statute. That statute is still on the books, and I presume that it applies in Alabama state court, but not in federal court. And if if Your Honor goes and looks at that decision that Justice, I think Justice Scalia cited, you'll see the chapter and verse on what that statute is. But it seems I've I've I'm running out of time for rebuttal. So I will. Well, we'll give you a little bit of extra time before we do that. I have one more question for you. So as I understand it, your position is that in our Gemini decision that Gemini is Sun versus advanced China systems and the way they analyze forum non and 1404, because in Gemini, it was only a motion to dismiss and not a transfer. So your your view, if I understand it correctly, is Gemini is irrelevant to our calculus. I don't think Gemini controls. I don't think advanced China health care controls. All right. So I agree. We'll give you some time. Well, I was just asking if that's your position. So but we'll give you time. We'll give you some time on rebuttal and we'll hear from your friend now. May it please the court. My name is Anthony Haller representing Jonathan Weber and Depew Synthes sales in this appeal from the district court's February 5th, 2019 order denying the motion to dismiss or in the alternative to transfer and the September 29th, 2020 order granting partial summary judgment. We submit the district court did not abuse its discretion in declining to enforce the forum clause and in applying the traditional 1404A factors to resolve the question. There were two grounds for the district court's decision. First, that the contract had been voided by the contracting party pursuant to California Labor Code Section 925. And secondly, that the clause was in any event unenforceable because it contravened a strong public policy of California enshrined in that same statute. With the court's permission, I'd like to attack the enforceability issue first, then go to the question of the threshold question of the existence of the clause. And then I'd like to have a word on the fact that Depew Synthes was a non-contracting party and therefore a different analysis applies. So and in that context, Judge Bybee, when I get to the second point, I will specifically address where the Alabama policy came from and it's not a statute. If I could go first to the enforceability question, the clause was unreasonable because it contravened a strong public policy. The court's conclusion in that respect was a proper exercise of discretion. In Gemini, this court said the failure of the district court in that case, taking into account a much broader Idaho statute, was an abuse of discretion. It cannot possibly be the case that this court, following that mandate, could be viewed as having abused its discretion. Those two things do not go together. And counsel, your friend's point is that Gemini is a non-sequitur in this analysis because it didn't involve 14 of them. Well, what's your what's your what's your response to that? I have a three part answer, Your Honor. First, in Atlantic Marine, which is obviously controlling, the Supreme Court said that 1404A is merely a codification of the doctrine of forum non-convenes and cited Bremen with approval. In Stewart itself, if you look at the concurrence of Justice Kennedy, he said the justifications we noted in the Bremen should be understood to guide the district court's analysis of Section 1404A. And in the quartet of cases in the Ninth Circuit, including advanced China health care and in Gemini, this court has held that Bremen informs the 1404 analysis under Atlantic Marine, that it informs Atlantic Marine. It is good law. You said, I think you joined in the opinion in Gemini, Judge Bennett, that only the Supreme Court could change that. So Bremen does control. So so in your view, while it's theoretically possible that the Ninth Circuit has gotten it wrong in all of these cases, that would not be for this panel to say. Well, yes, yes, Your Honor, I would say that. But more more importantly, I would say it can't possibly have been an abuse of discretion for the district court to follow the controlling authority of the Ninth Circuit in a quartet of cases. So unless there are any questions on enforceability, I'd like to go to the interesting, though not necessarily any more determinative question of the of whether a contract existed in the first place that could be enforced, at least clauses in a contract that could be enforced. I submit to the panel that it's an uncontroversial proposition that before a district court sitting in diversity reaches the question of enforcing a forum selection clause, it must determine certain threshold questions. Typically, courts do this all the time. Is it a mandatory or a permissive clause? Does it cover the claims? Does it cover the parties? Does an agreement exist between these parties? And if so, does it contain the forum selection clause? I doubt we would be sitting here today if this contract said expressly in it that there's a forum selection and forum choice and a choice of law provision. But Mr. Weber, as a contracting party, has the right to revoke. We wouldn't be here on this case. By operation of law, that is what Section 925 does. It's a matter of contract formation law under general contract law, which can be common law and it can be statutory law. In this case, it's statutory law. And it says, to your point, Judge Bennett, it's it's not permissive. It's it's thou shalt not have such a clause unless and the unless doesn't exist in this case. Thou shalt not. It was illegal in the beginning and Mr. Weber had the right to void it and he voided it. And when the district court received this motion to transfer, there was no extant forum selection provision to be enforced. So the court can't possibly have abused its discretion in that regard. And Stewart doesn't come close to to preempting a statute of this nature. Stewart, as Judge Lynn said, is a narrow holding. And and I think that. It is necessary to actually go back to what did the district court there do? I have I had to buy it for 15 dollars, the opinion, it's very short. But what the district court did didn't apply a statute. The district court said the course, look, the court and I'm quoting point three, the contract where the material events took place, i.e., Alabama, for the law determining the forum in Alabama clearly does not favor forum selection clauses. And the the the issue of what the policy was was subject to detailed discussion in the 11th Circuit. The policy, what the district court said is there's this policy and it came from an Alabama Supreme Court reference in the Stewart opinion, Red Wing carriers versus Foster, which was a a rule of state jurisdiction that that in Alabama, a party can't consent to jurisdiction and can't consent against jurisdiction. That was the rule. It was a rule of procedure that applied to state courts. And the Supreme Court is saying that can't be applied in federal courts. That state rule cannot preempt, you know, in the reverse that the federal statute, no, the federal statute governs. So we begin the analysis with 1404. That's all it said. And then it says, oh, and the state law considerations, we're not we're not passing on them. The 11th Circuit passed on them, but it's not necessary because we're not there yet. We're going to remand, let the district court do that. And so and it says explicitly the state law public policy is entitled to consideration in what we require, which is a discretionary, multifaceted analysis. Counsel, counsel, what do you what do you do? What do you do with the last sentence of footnote 10 of Stewart organization? If a state cannot preempt the district court's consideration of a forum selection clause by that, the clause is automatically enforceable. It makes no sense for it to be able to do so by holding the clause automatically void. Well, because I think that the court is addressing the issue that I framed, which is that you can't have a state law of jurisdiction that preempts 1404. That's all that was being addressed. Your Honor, Stewart is is really does not stand for the the the federal supremacy proposition that my learned friend, Mr. Carty, has suggested in this case. It simply cannot be read that way. It presupposed a commercial agreement that was enforceable. That's what Atlantic Marine did. And I would say all that. The debate with the dissent really was relates to a different issue that I I submit was decided in first options, which is, yes, these these matters of contract formation, the initial validity need to be determined under state law. And I mean, that's what first option says as to arbitration agreements. And I submit that's the way the courts have been treating the 1404A analysis for for many, many years and should continue to do so. Mike, are there any other questions on on the existence of the agreement point under 925? Because if not, I just want to address briefly the issue of the Pusynthes role in this. The Pusynthes was not a contracting party. And and therefore, it is not in our submission bound by the forum selection clause. My learned friend, Mr. Carty, asserts that there is a doctrine in the Ninth Circuit emanating from Minetti-Farrow that a non-party can be bound if they're closely related. But I would submit that Minetti-Farrow's holding is that you've got to be closely related to the underlying contractual relationships. And there certainly has to be an element of foreseeability. There couldn't be two entities at further poles apart with respect to the underlying employment agreement than Stryker and the Pusynthes. They are, you know, competence in a competitive battle. The Pusynthes had nothing to do with the original contract. And even if an argument can be made by joining in the declaratory judgment action, somehow that makes one a closely related party. And I submit that is should not be the law. And I don't think that this circuit has really addressed the four corners of Minetti-Farrow. But putting that aside, the vital point that I'd like to make to this court is when you have a non-consenting party, that party is not covered by 1404A, the subsection that deals with transfer to a division or district to which the party is consented. And therefore, the holding in Stewart and Atlantic Marine simply does not apply. So it may be that a district court says in the application of its discretion of the discretionary standards, well, I think because you did this, I'm going to bind you to that and send you off to the other district and transfer. But there's got to be a separate analysis. And that analysis is not informed by Atlantic Marine because the Pusynthes is not a contracting party. So the district court would have. Needed to, it didn't do this because it didn't need to reach the issue in the case, look at the private interests and the public interests and also determine is the district of New Jersey a forum in which the Pusynthes can be properly transferred, which I submit in this case, the answer to that is no. So there's a whole range of issues that are subordinate. And my point is that all roads lead back. This is my conclusion to the point that the district court basically got it right. This is certainly not an abuse of discretion. The decisions were very thoughtful, followed what I would submit is clear. Ninth Circuit controlling authority enforced Section 1925 the way it should be. And I would like to end, if I may, with just a practical perspective to the court as a someone that deals in this area of law a lot and has been involved in many disputes involving these type of agreements and forum selection provisions before the 1925 statute was enacted. Litigants routinely did put into agreements exclusive forum provisions, choice of law provisions, and that enabled a litigant to enforce a non-compete agreement in a foreign jurisdiction. And that was fine. But from the once the statute is enacted and and one represents a client that is operating in California, it can't possibly be the conclusion this court would like that that we would advise a client, oh, don't let don't tell the employee that they need counsel, because we have this little loophole where we can go to a foreign jurisdiction and get out of the requirements of 925. That certainly, I would say to the panel, is not the advice that I would ever give a client. It's not the advice we do give a client. They must abide by Section 925. It is prohibitive. It's illegal to do this. And the court should not countenance a theory under which Stryker or HOC, in this case, avoids its obligations under California law. So with that, I would rest on the briefs. All right. Thank you. Unless my colleagues have any questions for Mr. Haller, then, Mr. Carty, we will we'll give you three minutes. Thank you, Your Honor. I think it's important that I revisit the validity issue very quickly. This case does not involve validity. I mean, I know that the plaintiffs want to make it about validity, but it's just not. There's no question that there was a validly formed forum selection clause. There's plaintiffs have never challenged formation. They've never claimed fraud. They've never claimed overreaching. The only thing that they've ever cited is Section 925. But as I said before, 925 presumes that you have a validly formed forum selection clause. That can Mr. Mr. Carty, why don't you wait a second? Mr. Haller, could you mute your mic? We're getting some background noise there. OK, hopefully that'll take care of it. I don't see it muted, but but go ahead, Mr. Carty. Thank you, Your Honor. And, you know, again, I know I've beat this horse, but Stewart Organization says that a statute that statutes like 925 cannot serve to invalidate or render unenforceable on otherwise valid forum selection clause. I'd also like to point out that by allowing employees to void these kinds of clauses at their at their option, California is essentially trying to accomplish indirectly what the Alabama state with the state of Alabama was not allowed to accomplish directly. Stewart's overarching point is that states may not modify the Section 1404A analysis and a law that does so through an intermediary. You know, counsel, I don't like to interrupt somebody's rebuttal, but I would push back on that a little. It strikes me that California is saying is in some in a clause this important. We want somebody to have a lawyer, which which strikes me as a routine kind of state interest that this is so important. We want to make sure it's not done by an unrepresented party. Fair enough, but the the ultimate outcome of that is that the state is allowing an intermediary to alter the Section 1404A analysis. The the conflict with the ultimate conflict with 1404A is the same. And so to the same extent, it should be preempted. But separately from preemption, there's the established maxim that one one cannot do and do indirectly what one cannot do directly. The Supreme Court has adopted that maxim long ago, and it occasionally rejects attempts like this by states to to to legislate around federal statutes by delegating power to to intermediaries. As for the Alabama statute, I know there's a statute. My friend, Mr. Haller, said that there was not, but there is. And I know it exists. I just can't cite it for you. We cited it in our mandamus petition earlier in this case. It was the state venue statute. And it I think Mr. Haller was correct. I think he referred to a decision of the Alabama Supreme Court in Red Wing Carriers, and that was cited in Stewart in Justice Scalia's dissent. Yeah, that's correct. But that holding that holding of the Alabama Supreme Court is quite different from Section 925. The if you dig down and I know we cited this in our mandamus petition, and I'm at a loss here because I don't have that petition in front of us. But there is if you dig down deeper and and I think if you look at the intermediate court in Red Wing, they cite the statute. I think please don't hold me to that. But I there was I remember going through and digging a little deeper than Red Wing and finding a citation to this statute. But there is that. Does the statute use it? You mentioned that it was a state venue provision. State venue provision would be very different from a contract formation provision. That's that's where it's that's where it's found. It's found in the venue statute. And it says that these kinds of would be very different from the way that California has approached this, which is the matter of contract formation. See, I don't I don't view this as contract formation for the for the simple reason that if 925 applies at all, you've already got a validly formed contract. Well, otherwise it couldn't be voided. It's it's voidable, right? It's not void. It's voidable. So I don't view it as a formation issue at all. I don't know how you can read Section 925 that way. 925 says you you cannot require someone to enter into a contract that specifies a place of litigation outside of California and that the party is not represented by counsel at his choice. He can void that provision. Well, that's that's the whole catch here is that he can void it. And if he can void it, that means a contract exists. Otherwise, there would be there would be nothing to void. And yes, the the the state of California is telling people to that they that they can't have these kinds of agreements without a lawyer present. But then they don't go the extra step and invalidate it. Quite the contrary, they assume that it is is valid, enforceable until it's voided by the by the employee. And so why don't why don't why don't you conclude? OK. The only other thing that I would say is that if states were allowed to declare a forum selection clauses void either directly or indirectly, if 925 is allowed to survive, then a few things would happen. Not only would it clash with Stewart Organization and Atlantic Marine, it would also offend staunch federal public policy favoring forum selection clauses. It would create a circuit split with the Fourth Circuit. And I believe with the Third Circuit, it would invite a patchwork of state laws that would destroy the uniformity that Congress intended. It would lead to diametrically opposed outcomes. That would depend. I think I think I think we have your argument. Counsel, thank you. We thank both parties for their arguments. And the case just argued is submitted.
judges: Linn, BYBEE, BENNETT